# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

|  |  |  |
|---|---|---|
| ANGEL GARRETT | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No.  2:19-cv-04203-MDH |
| | ) | |
| RUTTER AND SLEETH LAW | ) | |
| OFFICES, BRIAN D. SLEETH AND | ) | |
| JAMES RUTTER | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Before the Court are Defendants' Motion for Summary Judgment (Doc. 35) and Plaintiff's Motion for Partial Summary Judgment (Doc. 52). Defendants contend that the are entitled to judgment as a matter of law on all of Plaintiff's claims. Plaintiff moves this Court for summary judgment on Counts I (Fair Labor Standards Act—Failure to Pay Overtime) and II (Missouri Minimum Wage Law—Failure to Pay Overtime) of her Complaint. For the reasons set forth herein, both motions are **DENIED**.

## BACKGROUND

Plaintiff Angel Garrett is suing Defendants Brian D. Sleeth, James Rutter, and Rutter and Sleeth Law Offices ("Defendants") for violations of the Fair Labor Standards Act ("FLSA") and Missouri Minimum Wage Law ("MMWL") for unpaid overtime for her work as a paralegal/secretary at Defendants' law firm. Specifically, the Amended Complaint (Doc. 9) alleges that Defendants violated the FLSA by failing to pay overtime (Count I); Defendants violated the

MMWL for failing to pay overtime (Count II); Plaintiff alleges quantum meruit (Count III); and Plaintiff alleges unjust enrichment (Count IV).

Defendants practice in varied areas of law, including criminal defense, estate law, family law, personally injury, and bankruptcy. (*See* Doc. 46, 5). Defendants hired Plaintiff as a paralegal/secretary on or around September 7, 2017. (Doc. 9, Ex. C). While there is dispute over whether Plaintiff voluntarily quit or was constructively discharged, Plaintiff's employment with Defendants ended on or about March 29, 2019. (*See* Doc. 35-1, Ex. C).

According to Defendants, Plaintiff's job duties were clerical and included answering the phone, talking to clients, and scheduling appointments for the two attorneys in Defendants' office. (Doc. 35-1, 6). According to Plaintiff, in addition to these duties, Plaintiff researched legal issues, drafted discovery requests, drafted correspondence, interacted with marketing firms, ran billing for clients and for pre-paid legal services, interacted with insurance companies, interacted with Medicare and Medicaid, assisted with online filing in state and federal courts, ordered supplies, and drafted and mailed demand letters. (Doc. 46, 6). Plaintiff also asserts that she assisted with bankruptcy litigation during her employment. *Id*. Plaintiff states that she also ordered office supplies for Defendants, which Defendants also dispute. *Id*. at 12-13.

Defendants assert that during the time of Plaintiff's employment, Defendants' law firm practiced law and generated business from clients located exclusively within the State of Missouri. (Doc. 35-1, 7). Plaintiff alleges that she was aware of at least four clients of Defendants that were out of state clients, allegedly located in California, Maryland, Arizona, and Connecticut, and that Plaintiff communicated with these clients on several occasions via telephone. (Doc. 46, 17). The extent to which Plaintiff was involved with personal injury cases handled by the law firm is

disputed. *See id.* at 19. Moreover, Plaintiff claims she regularly communicated with out of state parties on behalf of Defendants. *See id*. at 27. Defendants dispute this. (*See* Doc. 35-1, 8).

Many of Plaintiff's claims are purportedly supported by the "Work Record" document produced by Plaintiff. Plaintiff allegedly kept a record of her activities for Defendants in this document, which is comprised of a table that lists Date, Client, and Work Description. Plaintiff asserts that she worked approximately 342 hours of overtime, and that these added hours were a result of Plaintiff working though her lunch hour. (*See* Doc. 53, 19). Defendants dispute this.

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

The FLSA requires employers to pay all covered employees at least time and half for all hours worked in excess of forty hours. 29 U.S.C. § 207(a)(1). To establish a prima facie case for overtime under the FLSA, a plaintiff must prove four things. First, a plaintiff must show the existence of an employment relationship. *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir. 1993). Second, a plaintiff must show that she was covered by the FLSA. *Baker v. Stone Cnty., Mo,* 41 F. Supp. 2d 965, 978 (W.D. Mo. 1999). Third, a plaintiff must establish the defendant's actual or constructive knowledge of overtime hours worked without proper compensation for all hours in excess of forty in one workweek. *Brennan v. Qwest Commc'n Intern., Inc.*, 727 F. Supp. 2d 751 (D. Minn. 2010); *see also* 29 C.F.R. § 785.11 (including in the definition of work time "work [that is] not requested but suffered or permitted"). Finally, a plaintiff must demonstrate that she was not properly compensated under the Act and must prove the amount of the liability. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiff has the burden of proof to establish her prima facie case.

As raised by the cross motions for summary judgment in this case, the three primary issues identified by the parties are whether or not there is a genuine issue of material fact as to: (1) whether the not Plaintiff qualifies for the FLSA's individual coverage, and (2) whether Plaintiff is entitled to unpaid overtime as she alleges. As set forth below, the Court finds that there is a genuine issue of material fact as to whether Plaintiff qualifies for FLSA coverage or is entitled to unpaid overtime.

## I.      Individual Coverage under the FLSA

At issue is whether there is a genuine issue of material fact as to whether Plaintiff qualifies for the FLSA's individual coverage. One of the two methods plaintiffs may use to prove "coverage" under the interstate commerce requirement of the FLSA is through proof of "individual coverage." See 29 U.S.C. § 207. Individual coverage under the FLSA exists when an employee's work involves the continued use of the interstate mails, telegraph, telephone or similar instrumentalities for communication across state lines. *Schmidt v. Peoples Tel. Union of Maryville, Mo.*, 138 F.2d 13, 15 (8th Cir. 1943); *O'Quinn v. Country Inn, Inc.*, 2019 WL 1968051, at *4 (W.D. Ark. April 4, 2019) (citing 29 C.F.R. § 776.10(b)). For individual coverage to apply under the FLSA must be engaged in commerce or in the production of goods for commerce. *McLeod v. Trelkeld*, 319 U.S. 491, 497 (1943).

Plaintiff alleges that she had regular, recurrent, and meaningful contact with Defendants' vendors, clients, and/or companies who were outside the state of Missouri about two to three times per week and that this is sufficient to establish that she was engaged in commerce. (Doc. 53, 18). Over the course of her one- and one-half years of employment, Plaintiff alleges that she has identified around 100 communications across state lines. *Id*. Specifically, Plaintiff allegedly had regular contact with insurance companies outside the state of Missouri in connection to five or more personal injury cases of Defendants. *Id*. at 16. Plaintiff also alleges she had regular contact with Medicare or Medicaid with respect to the injury clients, and Plaintiff claims that she was in charge of drafting and sending the correspondence across state lines. *Id*.  Plaintiff asserts that she interacted with Medicare and out-of-state insurance companies more than 30 times during her employment. *Id*. at 16-17.

During Plaintiff's employment, Defendants were contracted with various pre-paid legal providers, and Plaintiff alleges she was responsible for submitting these billings, time entries, and descriptions of services across the internet to these providers which are located in New York, Iowa, and Texas. *Id*. at 17. Plaintiff alleges she interacted with these companies by telephone and email more than 26 times during her employment. *Id*.

Plaintiff claims she was also responsible for communicating with Defendants' internet marketing consultant, which is based out of California, Texas, and New York. *Id*. Plaintiff alleges that she spoke with this out-of-state marketing representative roughly 10 times on the telephone and also exchanged emails. *Id*. Plaintiff asserts that she was aware of clients located in California, Maryland, Arizona, and Connecticut, and that Plaintiff communicated with these clients on several occasions via telephone and email. *Id*. at 18. Plaintiff claims she was responsible for securing a process server in Arizona and Texas and was responsible for verifying other case/client details. *Id*. Plaintiff alleges she made several calls to Arizona and Texas to accomplish these tasks. *Id*. Plaintiff also claims she was responsible for running credit card payments of the firm's clients on a roughly weekly basis and assisted with many bankruptcy clients and filings. *Id*.

Defendants dispute Plaintiff's factual allegations and furthermore argue that, even if Plaintiff had contact with out-of-state clients or otherwise used the instrumentalities of interstate commerce during her employment, Plaintiff's activities were not so substantial or meaningful to rise to the level of establishing individual coverage. (*See, e.g.,* Doc. 35-1, 13-14). Defendants note that Plaintiff uses the Work Record document to support most of her claims. (*See generally*, Doc. 49). While the Court has previously denied Defendants' motion to exclude the Work Record (Doc. 65), Defendants also argue that the document itself fails to allege facts sufficient on which a

reasonable jury could determine that Plaintiff qualified for individual coverage, because it is a "conclusory, self-serving declaration[.]" lacking in specific facts. (Doc. 49, at 9).

Defendants rely heavily on *Curry v. High Springs Family Practice and Diagnosis Center, Inc.*, 2009 WL 3163221 (N.D. Fla. 2009), in which the court found that the evidence that Plaintiff made only 29 calls and/or faxes to out of state insurance companies during her 15 months of employment was not sufficient to survive summary judgment on the issue of individual coverage. Similarly, Defendants cite *Dent v. Giaimo*, 606 F. Supp. 2d 1357 (S.D. Fla. 2009), where the Court found that an office assistant who performed entirely clerical duties did not qualify for individual coverage despite sporadic contact with out-of-state insurance companies.

Defendants' reliance on cases from the district courts of the 11th Circuit and the 11th Circuit itself is not compelling, particularly given that the facts of those cases do not mirror the facts at hand as Defendants would argue. Plaintiff argues that the facts of cases like *Curry* and *Dent* are distinguishable—and the Court agrees—because they involve plaintiffs who allege far less frequent or substantial contact with out-of-state entities than Plaintiff here does. (Doc. 46, 31-33). Plaintiff cites case law from district courts in the 8th Circuit to support her argument that summary judgment is inappropriate here. *See, Lester v. Wildwood Financial Group*, Ltd., 1999 WL 35793739, at *4 (E.D. Mo. 1999) (denying summary judgment due to potential individual coverage, noting that "[i]t is undisputed that a large portion of Lester's activities on behalf of Wildwood entailed continued use of the interstate mails and telephone instrumentalities for communication across State lines. As such, an employee performing Lester's activities would be entitled to individual coverage under the FLSA. Wildwood cannot avoid liability solely because it does not qualify as an enterprise under the FLSA."); *Perez v. Mian Enterprises, Inc.*, 2018 WL 10394809, at *1 (W.D. Ark. 2018) (granting the plaintiff's motion for summary judgment, holding

as to FLSA individual liability that the sales clerk plaintiff "was a covered individual because she used telephone lines to process credit cards for customers who purchased gasoline for use on interstate highways and used the telephone and internet to order cigarettes from national brands for resale."); *O'Quinn v. Country Inn, Inc.*, 2019 WL 1968051, at \*4 (W.D. Ark. 2019) (denying defendant's summary judgment as to FLSA individual liability because the plaintiff – a small motel office manager – produced evidence from which a reasonable jury could determine the she qualified for individual coverage by regularly using the instrumentalities of interstate commerce in her work).

This Court in *Lochiano v. Compassionate Care*, *LLC*, 2012 WL 4059873 (W.D. Mo. 2012) denied summary judgment on this same issue where the Plaintiff alleged that she was engaged in commerce via her work activities such as (1) traveling across state lines; (2) using her cell phone to make interstate calls; (3) assisting clients in purchasing goods that had been transported in interstate commerce; and (4) using goods that had moved in interstate commerce. *Id*. at \*6. Even though this Court found that the plaintiff's only support for her allegations were her own conclusory statements, the Court nonetheless found that there was a genuine issue of material fact regarding whether the plaintiff was covered by the FLSA. *Id*.

Here, both parties dispute Plaintiff's activities. In particular, whether she had contact with certain out-of-state entities and how often she had contact with them. Both parties have submitted evidence, including the Work Record and the parties' own declarations, to support their arguments. Like this Court's conclusion in *Lochiano*, the Court here finds that there is genuine issue of material fact as to whether Plaintiff is entitled to individual coverage under the FLSA. Accordingly, Defendants' Motion and Plaintiff's Motion, with respect to the issue of FLSA coverage, are denied.

## II. Unpaid Overtime

Plaintiff claims that she worked approximately 342 hours of overtime by working through her lunch hour nearly every day of her employment. (Doc. 53, 19). Plaintiff alleges that she created timesheets that kept track of her hours worked in each work week and provided these to Defendants bi-weekly. *Id*. Plaintiff further asserts that (1) Defendants were at lunch for approximately two and one-half hours each workday; (2) Defendants did not know what Plaintiff was doing while they were at lunch; (3) Defendants did not keep track of the hours Plaintiff worked; and (4) Defendants did not pay Plaintiff for all hours worked. *Id*.

Defendants claim that Plaintiff never worked more than 40 hours in any week in which she was employed by Defendants. (Doc. 60, 47). Defendants have also produced "Plaintiff's Payroll Records" to support this claim, which show that Plaintiff was never paid for overtime hours. (Doc. 60, Ex. C). However, Defendants have admitted that they did not keep time records for Plaintiff. Defendants argue that Plaintiff's overtime claims appear inconsistent, as Plaintiff's "time record" only shows 144.25 documented hours of alleged overtime worked, at least in part because about six months of time is missing. (Doc. 60, 47).

Given the overall deficiency in recordkeeping, as well as the conflicting and incomplete nature of the evidence that has been submitted in this matter, the Court finds that there is a genuine issue of material fact as to whether or not Plaintiff is entitled to unpaid overtime, which applies to the claims under both the FLSA and MMWL.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment (Doc. 35) and Plaintiff's Motion for Partial Summary Judgment (Doc. 52) are hereby **DENIED** in their entirety.

**IT IS SO ORDERED.**

Dated: November 18, 2020

                                     */s/ Douglas Harpool*
                                     **DOUGLAS HARPOOL**
                                     **United States District Judge**